UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

STEVEN HAYES, as personal representative
of the estate of Quanice Hayes, deceased, and
VENUS HAYES,

Case No. 3:18-cv-00988-AC

ORDER ON MOTION TO STRIKE

Plaintiffs,

v.

CITY OF PORTLAND, a municipal
corporation, and ANDREW HEARST,

Defendants.

_____

ACOSTA, Magistrate Judge:

Presently before the court is Defendants City of Portland ("the City") and Andrew Hearst's

(collectively "Defendants") Motion to Strike pursuant to Federal Rule of Civil Procedure 12(f).

(Mot. to Strike, ECF No. 52.)  Defendants seek to strike certain allegations in Paragraph 14 of

Plaintiffs' First Amended Complaint as immaterial and irrelevant to any issue in the case.  Plaintiffs

Steven Hayes and Venus Hayes ("Plaintiffs") respond that the allegations are relevant to the Portland

Police Bureau's ("PPB") history of failing to discipline PPB officers for using deadly force against

1 - ORDER ON MOTION TO STRIKE

community members.  For the reasons that follow, Defendants' motion is granted in part and denied in part.

*Background*

On February 9, 2017, Quanice Hayes was shot by Portland Police Officer Defendant Andrew Hearst ("Hearst").  (First Am. Compl. ¶ 17.)  Hearst shot Plaintiff twice in the torso and once in the forehead.  (*Id.*)  Quanice Hayes was unarmed, and died at the scene.  (*Id.* ¶¶ 17, 20, 21.)  Plaintiffs allege that PPB's review of the shooting failed to result in any disciplinary or corrective action, and instead found that all aspects of the shooting were "in policy."  (*Id.*)

As relevant to this motion, in this action, Plaintiffs bring two *Monell*[1] claims under § 1983, and a state law wrongful death claim against the City.  In the first *Monell* claim, Plaintiffs allege the City of Portland has a policy, custom, and practice of utilizing a team apprehension approach when encountering suspects believed to be armed ("high risk arrests").  (*Id.* ¶ 25.)  Plaintiffs allege that the City's practice fails to create a "command control" during high risk arrests, leads to chaotic situations, and places suspects at extreme risk of being shot and killed during apprehension.  (*Id.* ¶¶ 25-28.)  Plaintiffs allege the City's practice was a proximate cause of Quanice Hayes's death.  (*Id.* at ¶ 28.)

In the second *Monell* claim, Plaintiffs allege that the City maintains an unconstitutional training policy, premised on the principle of "action-reaction." (*Id.* ¶ 29.)  Plaintiffs allege that the City has failed to properly train its PPB officers with respect to the action-reaction principle, a psychological concept related to police use of force.  (*Id.* ¶¶ 30-31.)  Plaintiffs contend that the failure to properly train police officers was a proximate cause of Quanice Hayes's death.  (*Id.* ¶ 32.)

---

[1] *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).

2 - ORDER ON MOTION TO STRIKE

In their negligence claim, Plaintiffs allege that the City's failure to require officers to use apprehension policies that give clear, uncontradicted instructions creates a foreseeable risk of harm to individuals they choose to arrest. (*Id.* ¶ 39.) Plaintiffs further allege the City of Portland's failure to enforce policies and develop and execute plans to safely take suspects into custody that minimize the risk of harm to officers and arrestees is unreasonable. (*Id.* ¶ 40.) Plaintiffs contend the City's failure to effectively train its police officers and ensure that training is followed creates a risk of death, and these failures caused the death of Quanice Hayes. (*Id.* ¶¶ 42-43.)

In the First Amended Complaint, Plaintiffs allege that in 2012, the U.S. Department of Justice ("DOJ") issued findings that the PPB "was engaging in a pattern and practice of unconstitutional and excessive force against community members and identified deficiencies in the City's use of force policies, practices, training, and officer accountability." (*Id.* ¶ 10.) Plaintiffs contend that the DOJ filed a lawsuit against the City, and the parties reached a Settlement Agreement related to the City's use of force policies, practices, and training, and enhancement of its data collection practices. (*Id.* ¶ 10.) Plaintiffs contend that since 2012, the PPB has revised its use of force policies and training to emphasize de-escalation, but in practice, the PPB does not effectively discipline officers who use excessive force. (*Id.* ¶ 11.)

In Paragraph 14 of the First Amended Complaint, Plaintiffs allege that "the use of deadly force by members of the [PPB] has been a long-standing source of tension between the City and Portland's African-American community." Plaintiffs contend that the tension has been aggravated by the City's failure to hold officers accountable for the use of deadly force. (*Id.* ¶ 14.) In Paragraph 14, Plaintiffs detail a number of specific incidents involving PPB officers and members of the African-American community, dating from 1964 through 2015. (*Id.* ¶ 14(a)-(p).)

3 - ORDER ON MOTION TO STRIKE

In the current motion, Defendants seek to strike certain portions of Paragraph 14, and subsections (a) through (j), (l), (m), and (o). Defendants argue the allegations are immaterial and irrelevant, and have no bearing on Plaintiff's two *Monell* claims or their negligence claim.[2] (Defs.' Mot. Strike at 2.)

*Legal Standards*

Pursuant to Rule 12(f), the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f); *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). A matter is redundant if it is superfluous and can be omitted without a loss of meaning. *See Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2005) (noting that a redundant matter is one that constitutes "needless repetition"); *Orff .v City of Imperial*, Case No. 17-cv-0116W (AGS), 2017 WL 2537250, at *3 (S.D. Cal. June 12, 2017) ("Redundant matter is the needless repetition of assertions."). A matter is immaterial if it "has no essential or important relationship to the claim for relief or the defenses being plead." *Whittlestone*, 618 F.3d at 974 (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)). A matter is impertinent if it "consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* (quoting *Fantasy*, 984 F.2d at

---

[2] Concurrently with their Motion to Strike, Defendants filed a motion for a Protective Order, seeking to limit discovery relating to whether the City has disciplined any PPB member for the use of excessive force and the circumstances of that discipline from 2010 through the present. (Defs.' Mot. Protective Order at 3, ECF No. 58.) "[T]he parties disagree about whether allegations of disparate, historical incidents of use of force by members of the Portland Police Bureau are relevant and pertinent to [P]laintiffs' current claims against the City." (*Id.*) The court conducted a hearing on Defendants' Motion for Protective Order on July 25, 2019. (ECF No. 65.) At the hearing, the court granted the Protective Order in part and denied it in part, determining that Plaintiffs were entitled to discovery dated from 2010 forward pertaining to past incidents of excessive lethal force with a firearm that resulted in death of an individual, the City's follow-up, and disciplinary action, if any.

4 - ORDER ON MOTION TO STRIKE

1527). "Scandalous matters are allegations that unnecessarily reflect . . . on the moral character of an individual or state . . . anything in repulsive language that detracts from the dignity of the court[.]" *Consumer Sols. REO, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1020 (N.D. Cal. 2009) (internal quotations, alterations, and citation omitted).

"The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy*, 984 F.2d at 1527 (quotation marks, citation, and first alteration omitted). "A motion to strike under Rule 12(f) should be denied unless it can be shown that no evidence in support of the allegation would be admissible, or those issues could have no possible bearing on the issues in the litigation." *Gay-Straight Alliance Network v. Visalia Unified Sch. Dist.*, 262 F. Supp. 2d 1088, 1099 (E.D. Cal. 2001). "However, a motion to strike 'may be proper if it will make the trial less complicated or if allegations being challenged are so unrelated to plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading will be prejudicial to the moving party.'" *City of Portland v. Iheanacho*, Case No. 3:17-cv-00401-AC, 2018 WL 1426564, at *3 (D. Or. Mar. 22, 2018) (quoting *Thornton v. Solutionone Cleaning Concepts, Inc.*, No. CIV F 06–1455 AWI SMS, 2007 WL 210586, at *1 (E.D. Cal. Jan. 26, 2007)).

When ruling on a motion to strike, the court must accept the plaintiff's allegations as true and liberally construe the complaint in the light most favorable to the plaintiff. *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1140 (N.D. Cal. 2010). Whether to grant a motion to strike is within the sound discretion of the district court. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 963 (9th Cir. 2018).

5 - ORDER ON MOTION TO STRIKE

To establish municipal liability under 42 U.S.C. § 1983, Plaintiffs must identify a municipal custom or policy that caused their injury. *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1232-33 (9th Cir. 2011). Here, Plaintiffs must demonstrate that the City's alleged lack of control during high risk arrests was so "widespread and permanent" to be the City's "standard operating procedure" that has "become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). To establish a § 1983 claim concerning the failure to train, Plaintiffs will need to show that the City acted with deliberate indifference to a substantial risk that its training on the action-reaction principle was inadequate to prevent violations of constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). The Ninth Circuit has recognized that a custom or practice can be inferred from "'evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded.'" *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1027 (9th Cir. 2015) (quoting *Hunter*, 652 F.3d at 1133).

*Discussion*

The allegations at issue in Defendants' motion to strike are contained exclusively in Paragraph 14 of the First Amended Complaint. Defendants argue that the allegations in Paragraph 14, and Paragraph 14 subsections (a)-(j), (l), (m), and (o) are immaterial or impertinent to Plaintiffs *Monell* claims and negligence claim. The court examines each allegation and subsection separately.

I.    Paragraph 14

The first two sentences of Paragraph 14 contain the following allegations:

> The use of deadly force by members of the Portland Police Bureau has been a long-standing source of tension between the City and Portland's African-American community. This tension has been aggravated by the City's failure to hold officers accountable for the use of deadly force.

(First Am. Compl. ¶ 14.)

6 - ORDER ON MOTION TO STRIKE

The court finds that Plaintiffs' allegations that PPB's use of deadly force is a long-standing tension between the City and the African-American community are not essential, important, or necessary to the allegations as set forth in the First Amended Complaint. As presently alleged, Plaintiffs' first *Monell* claim relates to team apprehensions during high risk arrests that create a high risk of being shot and killed during arrest. Plaintiffs' second *Monell* claim relates to an unconstitutional training concerning the use of guns and deadly force during arrests. While the allegations in Paragraph 14 reference the use of deadly force, the allegations do not relate to customs, policies, or training, and fail to discuss shootings or team apprehensions as asserted in Plaintiffs' *Monell* claims. As importantly to this motion, the allegations do not link this tension to the conduct that is the subject of Plaintiffs' claims against the Defendants in this action. And, Plaintiffs' *Monell* claims are not premised on the race of the victims. Thus, the allegations of tension between the City and the African-American community are not essential or necessary to the issues in question. *Whittlestone*, 618 F.3d at 974.

Likewise, the allegation that tension between the City and the African-American community has been aggravated by failing to hold PPB officers accountable for using deadly force does not relate to Plaintiffs' *Monell* claims or negligence claim. Allegations of aggravated tension between the City and community members at large are not relevant and are not essential or necessary to the conduct needed to establish Plaintiffs' *Monell* and negligence claims against the Defendants. Therefore, the court finds the allegations in the first two sentences of Paragraph 14 are not important or essential to Plaintiffs' alleged claims, and that they are immaterial and impertinent. *Whittlestone*, 618 F.3d at 974; *Severi v. Cty. of Kern*, Case No. 1:17-cv-0931 AWI JLT, 2017 WL 6513264, at *3-4 (E.D. Cal. Dec. 19, 2017) (striking overly broad allegations that did not involve similar law

7 - ORDER ON MOTION TO STRIKE

enforcement policies or similar situations to establish *Monell* claim from complaint). Accordingly, Defendants' motion to strike these sentences is GRANTED.

II.    Paragraph 14(a)

In Paragraph 14(a), Plaintiffs assert that PPB officers used deadly force against an African-American man named Cleotis Rhodes in 1964. Plaintiffs allege that Rhodes was shot and killed in the course of a traffic stop and that the officer responsible was not disciplined for the shooting. The court finds these allegations immaterial and impertinent. First, the policies and customs identified in Plaintiffs' *Monell* claims are not premised on the race of victim and thus the allegation that Rhodes was African-American is not necessary to the issues in question. *Whittlestone*, 618 F.3d at 974. Second, the court finds the allegations from 1964 are temporally remote from the policies and customs alleged in First Amended Complaint, and thus are not essential or important to resolution of the issues. Accordingly, Defendants' motion to strike Paragraph 14(a) is GRANTED.

III.    Paragraph 14(b)

In Paragraph 14(b), Plaintiffs allege that the City settled a class action lawsuit in 1971 concerning illegal treatment of African-American residents. The policies and customs identified in Plaintiffs' first *Monell* claim relates to team apprehensions during high risk arrests that place suspects at an extreme risk of being shot and killed. Plaintiffs' second *Monell* claim relates to an unconstitutional training concerning the use of guns and deadly force during arrests. There are no allegations in Paragraph 14(b) discussing shootings, team apprehensions, or deadly force. Also, the allegations in Paragraph 14(b) do not specify what illegal conduct was at issue in the settled lawsuit and it is unknown whether the alleged constitutional violations in Paragraph 14(b) involve similar constitutional violations as those alleged in the First Amended Complaint. *See Severi* , 2017 WL

8 - ORDER ON MOTION TO STRIKE

6513264, at *5, 7 (finding use of similar incidents to show policy and custom to establish *Monell* claim must involve similar constitutional violations). Thus, the court finds the allegations in Paragraph 14(b) are not important or essential to Plaintiffs' alleged claims. Finally, the allegations in Paragraph 14(b) are temporally remote from the policies and customs at issue in Plaintiffs' current action. For all these reasons, the court finds the allegations in Paragraph 14(b) are immaterial and impertinent. Accordingly, Defendants' motion to strike Paragraph 14(b) is GRANTED.

IV.    Paragraph 14(c)

In Paragraph 14(c), Plaintiffs allege that in the 1970's, sixty percent of people killed by the PPB were African-American, despite representing only seven percent of Portland's population. Plaintiffs also allege that the killing of Rickie Charles Jordan by officer Kenneth Sanford sparked outrage. The court finds the allegations in Paragraph 14(c) immaterial and impertinent to the policies and customs alleged in Plaintiffs' First Amended Complaint. Again, Plaintiffs claims are not premised on the race of the alleged victim. The statistical evidence cited by Plaintiffs is not sufficiently tailored to the allegation in the current action. As alleged, it is unknown whether the police-related deaths in Paragraph 14(c) resulted from similar types of constitutional violations as those alleged in the current action. *Severi*, 2017 WL 6513264, at *5, 7. The allegations in Paragraph 14(c) do not relate to policies or customs concerning team apprehensions, nor are they limited to incidents involving gun deaths. *Id.* at *4 (granting motion to strike where allegations did not relate to officer involved shooting). Furthermore, allegations related to the 1970's are temporally remote from the policies and customs identified in Plaintiffs' First Amended Complaint. Accordingly, the court finds Paragraph 14(c) immaterial and impertinent, and Defendant's motion to strike is GRANTED.

9 - ORDER ON MOTION TO STRIKE

V.    Paragraph 14(d)

In Paragraph 14(d), Plaintiffs allege that in the late 1970's and early 1980's, the Portland Police Association ("the Association"), the union that represents PPB officers, used its power through its collective bargaining agreement to "defend openly racist behaviors and excessive force" by PPB officers. And, Plaintiffs allege that the Association sued the Oregonian newspaper for libel after it investigated Sergeant John McNabb's use of racist language and excessive force. Similar to the claims in Paragraph 14(c), the allegations in Paragraph 14(d) do not relate to any policies or customs concerning team apprehensions or shooting deaths. And, Plaintiffs' *Monell* claims are not premised on the race of the victims. Thus, the allegations in Paragraph 14(d) have no essential or important relationship to the claims in this case. *Whittlestone*, 618 F.3d at 974. Accordingly, the court finds Paragraph 14(d) immaterial and impertinent, and Defendants' motion to strike Paragraph 14(d) is GRANTED.

VI.    Paragraph 14(e)

In Paragraph 14(e), Plaintiffs allege that in 1985, Officer Gary Barbour killed Lloyd "Tony" Stevenson by using a "sleeper hold," that Portland Police Chief Penny Harrington banned use of the hold, and that two Portland Police Officers printed t-shirts with derogatory phrases in response. Plaintiffs further allege that after Chief Harrington terminated the two officers, the Association challenged the discipline and the officers were reinstated. The allegations in Paragraph 14(d) revolve around the use of a "sleeper hold," whereas the challenged policies and customs at issue in this case involve shootings with firearms and team apprehensions during high risk arrests. Although Plaintiffs' *Monell* claims do allege a lack of training, the allegations in Paragraph 14(e) do not relate to policies or customs involving team apprehensions or officer shootings as alleged in Plaintiffs'

10 - ORDER ON MOTION TO STRIKE

*Monell* claims. Consequently, the court finds that the allegations in Paragraph 14(e) have no essential or important relationship to the claims in this case. *Whittlestone*, 618 F.3d at 974. Accordingly, the court finds Paragraph 14(e) immaterial and impertinent, and Defendants' motion to strike this paragraph is GRANTED.

VII.    Paragraph 14(i)

In Paragraph 14(i), Plaintiffs allege that in 2006, Officer Christopher Humphreys, Police Sergeant Kyle Nice, and Multnomah County Sheriff Deputy Bret Burton tackled and beat to death James Chase, a man with a mental illness who was attempting to flee on foot. There is nothing in Paragraph 14(i) pertaining to shootings or team apprehensions. "Law enforcement deaths that are not the result of a shooting do not establish a policy or custom of unreasonable shootings." *Severi*, 2017 WL 6513264, at *3. Because there is nothing in Paragraph 14(i) involving shooting deaths or team apprehensions, the court finds it has no essential or important relationship to the claims in this case. *Whittlestone*, 618 F.3d at 974. Accordingly, the court finds Paragraph 14(i) immaterial and impertinent, and Defendants' motion to strike this paragraph is GRANTED.

VIII.   Paragraph 14(m)

In Paragraph 14(m), Plaintiffs allege that in 2011, Officer Dane Reister mistakenly fired lethal rounds from a beanbag shotgun at William Monroe, and that Mr. Monroe was permanently disabled as a result of the officer's actions. Plaintiffs allege that Mr. Monroe was shot in the back while running from officers. Plaintiffs further allege that the City terminated Officer Reister, that Reister was charged with third and fourth degree assault, and that Reister's termination is the only example of effective discipline involving use of deadly force by an Officer. The policies and customs identified in the First Amended Complaint relate to high risk arrests and team apprehensions

11 - ORDER ON MOTION TO STRIKE

which place suspects at high risk of being shot and killed. Although this particular shooting involved a beanbag, Plaintiffs have alleged that Reister used deadly force, and that the shooting resulted in the permanent disability of Monroe. Viewing the Complaint in the light most favorable to Plaintiff, the court finds that the allegations in Paragraph 14(m) together with other evidence, arguably could support a policy of apprehending suspects in a manner that places them at high risk of being shot and killed. While the materiality of the allegations in Paragraph 14(m) appears low, the court cannot conclude at this early stage that this subsection has no important relationship Plaintiffs' *Monell* claims at this juncture. Because the allegation is not immaterial or impertinent, Defendants' motion to strike Paragraph 14(m) is DENIED.

IX.    Paragraphs 14(f),(g), (h), (j) and (l)

In Paragraphs 14(f), (g), (h), (j) and (l), Plaintiffs allege various PPB officers shot and killed various victims. Plaintiffs also allege that in each incident, the officers were not disciplined as a result of the shootings, or that the discipline was reduced after review by the Association. Central to Plaintiffs' claims here are whether the City had policies and customs of using team apprehensions that created a high risk of being shot and killed during arrest. Plaintiffs contend that the City's practice of not utilizing a command control created chaotic situations, leading to an increased risk of deadly shootings during apprehension. Broadly viewing Plaintiffs' claims in these subsections, the alleged shootings and resulting deaths could support their claim that the City had a custom of tolerating deadly force apprehensions. Thus, the court finds that the factual material underlying the allegations in Paragrahps 14(f), (g), (h), (j), and (l) are not immaterial or impertinent. *See Hawkins v. Medronic, Inc.*, 62 F. Supp. 3d 1144, 1167-68 (E.D. Cal. 2014) (denying motion to strike where

12 - ORDER ON MOTION TO STRIKE

plaintiff alleged custom and policy involving similar constitutional violations).   Accordingly, Defendants' motion to strike Paragraphs 14(f), (g), (h), (j), and (l) is DENIED.

X.      Paragraph 14(o)

In Paragraph 14(o), Plaintiffs allege that Defendant Hearst shot an AR-15 at Merle Hatch, who died after being shot by other officers at the scene.  Plaintiffs further allege that Defendant Hearst was not disciplined as a result of the incident.  Because the conduct alleged in Paragraph 14(o) directly relates to Defendant Hearst and involves the type of conduct that forms the basis of Plaintiffs *Monell* claims  – a shooting death during a team apprehension – Defendants' motion to strike Paragraph 14(o) is DENIED.  *Whittlestone*, 618 F.3d at 974; *Hawkins*, 62 F.Supp.3d at 1167.

*Conclusion*

Based on the foregoing, Defendants' Motion to Strike (ECF No. 52) is GRANTED IN PART and DENIED IN PART as follows:   Defendants' Motion is granted as to the first two sentences of Paragraph 14, and subsections (a), (b), (c), (d), (e), (i) of Paragraph 14, and they shall be stricken; Defendants' Motion is denied as to subsections (f), (g), (h), (j), (l), (m), and (o) of Paragraph 14.

IT IS SO ORDERED.

DATED this 17th day of October, 2019.

JOHN V. ACOSTA
United States Magistrate Judge

13 - ORDER ON MOTION TO STRIKE