UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

STEVEN HAYES, as personal representative
of the estate of Quanice Hayes, deceased, and
VENUS HAYES,

                        Plaintiffs,

     v.

CITY OF PORTLAND, a municipal
corporation, and ANDREW HEARST,

                      Defendants.

Case No.  3:18-cv-00988-AC

OPINION AND ORDER ON MOTION TO
STRIKE

_____

ACOSTA, Magistrate Judge:

       Presently before the court is Plaintiffs Steven Hayes and Venus Hayes's (collectively

"Plaintiffs") Rule 12 Motion to Strike Defendants' Affirmative Defenses and Memorandum in

Support ("Motion to Strike") pursuant to Federal Rule of Civil Procedure 12(f) ("Rule 12(f)").

(Mot. to Strike, ECF No. 76.)  Plaintiffs seek to strike certain affirmative defenses raised in

Defendants City of Portland ("the City") and Andrew Hearst ("Hearst") (collectively

"Defendants") Amended Answer and Affirmative Defenses to Plaintiffs' First Amended

Complaint ("Amended Answer") (Am. Answer, ECF No. 75) as immaterial, redundant, legally

Page 1 – OPINION AND ORDER ON MOTION TO STRIKE

insufficient, impertinent, scandalous, and irrelevant to any issue in the case.  For the reasons that

follow, Plaintiffs' Motion to Strike is granted in part and denied in part.

*Background*

On February 9, 2017, Quanice Hayes ("Plaintiff") was shot and killed by Portland Police

Officer Defendant Hearst.  (First Am. Compl., ECF No. 48, at ¶ 17.)  Hearst shot Plaintiff twice

in the torso and once in the forehead.  *(Id.)*  Quanice Hayes was unarmed and died at the scene.

(*Id.* at ¶¶ 17, 20, 21.)  Plaintiffs allege that Hearst used excessive force and that Portland Police

Bureau's ("PPB") review of the shooting wrongly found that all aspects of the shooting were "in

policy."  (*Id.*)

As relevant to this motion, Plaintiffs bring a Fourth Amendment claim for excessive force

against Hearst and two *Monell* claims under § 1983 against the City.  (*Id.* at ¶¶ 24–36.)  Plaintiffs

also bring a state law wrongful death claim against the City and battery action against Hearst.

(*Id.* at ¶¶ 37–47.)  In their excessive force claim against Hearst individually, Plaintiffs allege that

Hearst's use of force was objectively unreasonable under the circumstances, constituted

excessive force, and was an unreasonable and unjustified use of deadly force.  (*Id.* at ¶ 24.)  In

the first *Monell* claim, Plaintiffs allege the City of Portland has a policy, custom, and practice of

utilizing a team apprehension approach when encountering suspects believed to be armed ("high

risk arrests").  (*Id.* at ¶ 25.)  Plaintiffs allege that the City's practice fails to create a "command

control" during high-risk arrests, leads to chaotic situations, and places suspects at extreme risk

of being shot and killed during apprehension.  (*Id.* at ¶¶ 25–28.)  Plaintiffs allege the City's

practice was a proximate cause of Quanice Hayes's death.  (*Id.* at ¶ 28.)

In the second *Monell* claim, Plaintiffs allege that the City maintains an unconstitutional

Page 2 – OPINION AND ORDER ON MOTION TO STRIKE

training policy, premised on the principle of "action-reaction." (*Id.* at ¶ 29.) Plaintiffs allege that the City has failed to properly train its PPB officers with respect to the action-reaction principle, a psychological concept related to police use of force. (*Id.* at ¶¶ 30–31.) Plaintiffs contend that the failure to properly train police officers was a proximate cause of Quanice Hayes's death. (*Id.* at ¶ 32.)

Under Oregon law, Plaintiffs allege negligence against the City and battery against Hearst. In their negligence claim, Plaintiffs allege that the City's failure to require officers to use apprehension policies that give clear, uncontradicted instructions creates a foreseeable risk of harm to individuals they choose to arrest. (*Id.* at ¶ 39.) Plaintiffs further allege the City of Portland's failure to enforce policies and develop and execute plans to safely take suspects into custody that minimize the risk of harm to officers and arrestees is unreasonable. (*Id.* at ¶ 40.) Plaintiffs contend the City's failure to effectively train its police officers and ensure that training is followed creates a risk of death, and these failures caused the death of Quanice Hayes. (*Id.* at ¶¶ 42–43.) Plaintiffs further allege that Hearst's failure to listen and recognize that officers were giving contradictory commands and the officers' failure to develop and execute a plan to minimize the risk to the suspect and officers to take the suspect into custody was a cause of Quanice Hayes's death and created an unreasonable, obvious risk of death. (*Id.* at ¶¶ 44–47.) In their battery claim, Plaintiffs allege Hearst's use of force against Quanice Hayes was intentional and excessive under the circumstances. (*Id.* at ¶¶ 37–38.)

In response, in the Amended Answer, Defendants raise sixteen affirmative defenses as follows:

1. Failure to State a Claim
2. Qualified Immunity

Page 3 – OPINION AND ORDER ON MOTION TO STRIKE

3.   Objective Reasonableness
4.   Probable Cause
5.   Justification – Common Law
6.   Justification – Oregon Statute
7.   Privilege
8.   Good Faith
9.   Self-Defense
10.  Defense of Others
11.  Comparative Fault (under ORS 31.600–Decedent Quanice Hayes)
12.  Certain Felonious Conduct as Bar to Civil Action (under ORS 31.180)
13.  Comparative Fault (under ORS 31.600–Beneficiary Venus Hayes)
14.  Oregon Tort Claims Act
15.  No Duplicative Damages
16.  Right to Assert Additional Affirmative Defenses

(Am. Answer at 16–22).  In the current motion, Plaintiffs move to strike Defendants' third,

fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, and sixteenth

affirmative defenses.  (Mot. to Strike at 1–2.)  Plaintiffs move to strike these affirmative defenses

as immaterial, redundant, legally insufficient, immaterial, impertinent, or scandalous.  (Mot. to

Strike at 5–20.)  Further, Plaintiffs argue Defendants improperly use facts unknown to Hearst at

the time of the events to justify Hearst's actions and to "smear" Quanice Hayes and confuse the

issues.  (Mot. to Strike at 3.)

In Defendants' Response to Plaintiffs' Rule 12 Motion to Strike ("Defendants'

Response"), Defendants concede the third affirmative defense is a negative defense but

nonetheless urge the court not to strike it.  (Defs.' Resp., ECF No. 80, at 8.)  Defendants further

concede the sixteenth affirmative defense is not an affirmative defense but a "notice of

reservation to Plaintiffs" that this court may properly strike.  (Defs.' Resp. at 21.)  Defendants

also clarify the fifth, sixth, and eighth affirmative defenses apply only to Plaintiffs' state law

claims, and the eleventh affirmative defense applies only to Plaintiffs' negligence claim against

Page 4 – OPINION AND ORDER ON MOTION TO STRIKE

the City. (Defs.' Resp. at 9, 12, 14.) Otherwise, Defendants maintain they may assert the remaining affirmative defenses.[1]

Moreover, Defendants argue the collective knowledge doctrine should permit them to assert facts unknown to Hearst at the time of the events in support of their second affirmative defense of qualified immunity on the issue of probable cause, their eleventh and thirteenth affirmative defenses of comparative fault, and their twelfth affirmative defense of certain felonious conduct. (Defs.' Resp. at 6–7, 14–21.)

*Legal Standards*

## I.    Rule 12(f)

Pursuant to Rule 12(f), the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f); *Whittlestone, Inc. v. Handi-Craft Co.,* 618 F.3d 970, 973 (9th Cir. 2010). "An affirmative defense may be insufficient as a matter of pleading or as a matter of law." *Kohler v. Staples the Office Superstore, LLC*, 291 F.R.D. 464, 467 (S.D. Cal. 2013) (citing *Sec. People, Inc. v. Classic Woodworking, LLC*, No. C-04-3133 MMC, 2005 WL 645592, at *2 (N.D. Cal. Mar. 4, 2005)). An affirmative defense is pleaded insufficiently when it "fails to comply with Rule 8 pleading requirements by not providing 'plaintiff [with] fair notice of the nature of the defense' and the grounds upon which it rests." *Hayden v. U.S.*, 147 F. Supp. 3d 1125, 1127 (D. Or. 2015) (quoting *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979)). Where a motion challenges the factual sufficiency of the pleaded defenses, the court may properly apply the

---

[1] On March 5, 2020, Defendants filed a notice (ECF No. 101) of withdrawal of their Thirteenth Affirmative Defense. *See infra* page 36.

*Twombly/Iqbal* standard. *Hayden*, 147 F. Supp. 3d at 1128 (discussing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). "[A]n affirmative defense is legally insufficient only if it clearly lacks merit 'under any set of facts the defendant might allege.'" *Kohler*, 291 F.R.D. at 468 (quoting *McArdle v. AT&T Mobility, LLC*, 657 F. Supp. 2d 1140, 1149–50 (N.D. Cal. 2009), *rev'd on other grounds,* 474 Fed. Appx. 515 (2012)).

A matter is redundant if it is superfluous and can be omitted without a loss of meaning. *See Wilkerson v. Butler,* 229 F.R.D. 166, 170 (E.D. Cal. 2005) (noting that a redundant matter is one that constitutes "needless repetition"); *Orff v. City of Imperial,* No. 17-CV-0116W (AGS), 2017 WL 2537250, at *3 (S.D. Cal. June 12, 2017) ("Redundant matter is the needless repetition of assertions."). A matter is immaterial if it "has no essential or important relationship to the claim for relief or the defenses being plead." *Whittlestone,* 618 F.3d at 974 (quoting *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds,* 510 U.S. 517 (1994)). A matter is impertinent if it "consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* (quoting *Fantasy,* 984 F.2d at 1527). "Scandalous matters are allegations that unnecessarily reflect . . . on the moral character of an individual or state . . . anything in repulsive language that detracts from the dignity of the court[.]" *Consumer Sols. REO, LLC v. Hillery,* 658 F. Supp. 2d 1002, 1020 (N.D. Cal. 2009) (internal quotation marks, alterations, and citation omitted).

An affirmative defense will defeat the plaintiff's claim "even where the plaintiff has stated a prima facie case for recovery under the applicable law." *Quintana v. Baca*, 233 F.R.D. 562, 564 (C.D. Cal. 2005). "Not all contentions that attack a plaintiff's cause of action are affirmative defenses." *Id.* "An attack on [a] plaintiff's case-in-chief is not an affirmative

Page 6 – OPINION AND ORDER ON MOTION TO STRIKE

defense; it is a negative defense." *TSX Toys, Inc. v. 665, Inc.*, No. ED CV 14-02400-RGK (DTBx), 2015 WL 12746211, at *8 (C.D. Cal. Sept. 23, 2015) (citing *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002)).  Put differently, a negative defense merely negates an element the plaintiff is required to prove.  *Zivkovic*, 302 F.3d at 1088.  Negative defenses are immaterial and as such are subject to a Rule 12(f) motion to strike.  *TSX Toys, Inc.*, 2015 WL 12746211, at *8 (citing *Barnes v. AT&T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1174 (N.D. Cal. 2010)).

"The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy,* 984 F.2d at 1527 (internal quotation marks, citation, and first alteration omitted).  "A motion to strike under Rule 12(f) should be denied unless it can be shown that no evidence in support of the allegation would be admissible, or those issues could have no possible bearing on the issues in the litigation."  *Gay-Straight Alliance Network v. Visalia Unified Sch. Dist.,* 262 F. Supp. 2d 1088, 1099 (E.D. Cal. 2001).  "However, a motion to strike 'may be proper if it will make the trial less complicated or if allegations being challenged are so unrelated to plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading will be prejudicial to the moving party.'"  *City of Portland v. Iheanacho,* Case No. 3:17-CV-00401-AC, 2018 WL 1426564, at *3 (D. Or. Mar. 22, 2018) (quoting *Thornton v. Solutionone Cleaning Concepts, Inc.,* No. CIV F 06-1455 AWI SMS, 2007 WL 210586, at *1 (E.D. Cal. Jan. 26, 2007)).

When ruling on a motion to strike, the court must accept the nonmoving party's allegations as true and liberally construe the complaint in the light most favorable to the

Page 7 – OPINION AND ORDER ON MOTION TO STRIKE

nonmoving party. *See Stearns v. Select Comfort Retail Corp.,* 763 F. Supp. 2d 1128, 1140 (N.D. Cal. 2010).  Whether to grant a motion to strike is within the sound discretion of the district court.  *Davidson v. Kimberly-Clark Corp.,* 889 F.3d 956, 963 (9th Cir. 2018).

II.    Federal Claims

Plaintiffs bring a claim for excessive force in violation of the Fourth Amendment under 42 U.S.C. § 1983 against Hearst as an individual and against the City.  To establish municipal liability under § 1983, Plaintiffs must identify a municipal custom or policy that caused their injury. *Hunter* v. *Cty. of Sacramento,* 652 F.3d 1225, 1232–33 (9th Cir. 2011).  Here, Plaintiffs must demonstrate that the City's alleged lack of control during high risk arrests was so "widespread and permanent" to be the City's "standard operating procedure" that has "become a traditional method of carrying out policy." *Trevino* v. *Gates,* 99 F.3d 911, 918 (9th Cir. 1996).

To establish a § 1983 claim concerning the failure to train, Plaintiffs will need to show that the City acted with deliberate indifference to a substantial risk that its training on the action-reaction principle was inadequate to prevent violations of constitutional rights. *City of Canton v. Harris,* 489 U.S. 378, 388 (1989).  The Ninth Circuit has recognized that a custom or practice can be inferred from "'evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded.'" *Velazquez* v. *City of Long Beach,* 793 F.3d 1010, 1027 (9th Cir. 2015) (quoting *Hunter,* 652 F.3d at 1133).

To prove excessive force in violation of the Fourth Amendment, Plaintiffs must demonstrate the shooting was objectively unreasonable. *See Graham v. Connor*, 490 U.S. 386, 397 (1989).  Determining reasonableness requires balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the important of the

Page 8 – OPINION AND ORDER ON MOTION TO STRIKE

governmental interests alleged to justify the intrusion." *Id.* at 7–8 (internal quotation marks omitted); *see also Orn v. City of Tacoma*, 949 F.3d 1167, 1174 (9th Cir. 2020) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). The reasonableness inquiry involves an assessment of factors such as the nature and severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting or attempting to evade arrest by flight. *Zion v. County of Orange*, 874 F.3d 1072, 1075 (9th Cir. 2017) (quoting *Graham*, 490 U.S. at 396). If deadly force is used, the officer must have probable cause to believe the suspect poses a significant threat of death or serious physical injury. *Garner*, 471 U.S. at 3. If a suspect no longer poses an immediate threat, then the subsequent use of deadly force is unreasonable. *Zion*, 874 F.3d at 1076. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citation omitted). Although the facts known to the officer at the time force was applied are relevant to the reasonableness inquiry, the officer's subjective intent or motive is not relevant. NINTH CIR. JURY INSTRUCTIONS COMM., MANUAL OF MODEL CIVIL JURY INSTRUCTIONS FOR THE DISTRICT COURTS OF THE NINTH CIRCUIT 9.25 (2019).

III.    State Law Claims

Plaintiffs bring a state law claim for wrongful death under O.R.S. § 30.020. OR. REV. STAT. § 30.020 (2019). Here, Plaintiffs allege battery against Hearst and negligence against the City. To prove the intentional tort of battery in Oregon, Plaintiffs will need to show that "the conduct which brings about the harm" is "an act of volition on the actor's part, and the actor must have intended to bring about a harmful or offensive contact or put the other party in

apprehension thereof." *Doe 1 v. Lake Oswego School Dist.*, 353 Or. 321, 329 (2013) (quoting *Bakker v. Baza'r, Inc.*, 275 Or. 245, 249 (1976) (internal quotation marks omitted). To prove negligence against the City, Plaintiffs will need to prove that the City's conduct created a "foreseeable and unreasonable risk of legally cognizable harm to the plaintiff and that the conduct in fact caused that kind of harm to the plaintiff." *Chapman v. Mayfield*, 358 Or. 196, 205 (2015) (en banc).

*Discussion*

Each affirmative defense at issue is addressed in turn below, beginning with a discussion of the applicability of the collective knowledge doctrine.

I.    Collective Knowledge Doctrine

The parties dispute what facts Defendants may allege to support their affirmative defenses. (Mot. to Strike at 3, Defs.' Resp. at 11–12.) Most notably, Defendants urge this court to depart from a traditional Fourth Amendment analysis, which Defendants acknowledge is limited to facts known to the officer using force, and instead apply the "collective knowledge" doctrine. (Defs.' Resp. at 11.) The collective knowledge doctrine is not the standard for excessive force claims and lacks support in the Ninth Circuit and the District of Oregon.

"Under the collective knowledge doctrine, [the court] must determine whether an investigatory stop, search, or arrest complied with the Fourth Amendment by 'look[ing] to the collective knowledge of all the officers involved in the criminal investigation although all of the information known to the law enforcement officers involved in the investigation is not communicated to the officer who actually [undertakes the challenged action]." *U.S. v. Ramirez*, 473 F.3d 1026, 1032 (9th Cir. 2007) (quoting *U.S. v. Sutton*, 794 F.2d 1415, 1426 (9th Cir. 1986)).

The collective knowledge doctrine is proper in some Fourth Amendment cases, but not to claims of excessive force.  Courts may apply the collective knowledge doctrine to determine whether probable cause existed under the Fourth Amendment for an investigatory stop, search, or arrest.  *Ramirez*, 473 F.3d at 1031–32.  For example, in *Ramirez*, a police officer made a warrantless traffic stop based on facts communicated to him by radio.  *Id.* at 1030.  "The appellants challenged the validity of the traffic stop and argued [the officer] lacked personal knowledge of the facts purportedly giving rise to probable cause for an automobile search."  *Id.*  The court determined "where an officer (or team of officers), with direct personal knowledge of *all* the facts necessary to give rise to reasonable suspicion or probable cause, directs or requests that another officer, not previously involved in the investigation, conduct a stop, search or arrest," the collective knowledge doctrine applies.  *Id.* at 1033 (emphasis in original).

Excessive force is analyzed differently; the court uses a reasonableness standard: "an officer's use of force must be objectively reasonable based on his contemporaneous knowledge of the facts."  *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001); *see also Saucier v. Katz*, 533 U.S. 194, 207 (2001) ("Excessive force claims, like most other Fourth Amendment issues, are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred.")  That is, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham*, 490 U.S. at 396 (citation omitted).  Facts unknown to the officer using force at the time force is applied therefore are irrelevant to the reasonableness inquiry.  *See Orn*, 949 F.3d at 1177.  For example, in *Orn*, an officer asserted qualified immunity as a defense to an excessive force claim and argued his use of force was reasonable, in part because the officer

Page 11 – OPINION AND ORDER ON MOTION TO STRIKE

believed the suspect posed a threat of serious physical harm to another officer.  *Id.* at 1167, 1176. The officer also alleged a view of the facts that "hint[ed]" at a threat of serious physical harm to the general public, such as the suspect forcing an officer to veer into oncoming traffic.  *Id.* at 1177. However, the court found the incident — even if it occurred — was irrelevant to the Fourth Amendment analysis because the officer "did not witness it and a reasonable jury could conclude that he did not learn about it until after the shooting."  *Id.*   Thus, the reasonableness inquiry in excessive force cases does not take into account collective knowledge; rather, the focus is squarely on the knowledge of the officer applying force.

Case law in this district and the Ninth Circuit confirms that the collective knowledge doctrine is not applied in excessive force cases.  First, no cases apply the collective knowledge doctrine to excessive force claims.  Second, the Ninth Circuit in *Orn* recently had the opportunity to consider facts unknown to the officer applying force at the time force was applied, but as explained above, the court declined to consider as relevant to the excessive force determination facts other than those known to the officer at the time of the events.  *Orn*, 949 F.3d at 1177.  The clear rule in the Ninth Circuit is "an officer's use of force must be objectively reasonable based on his contemporaneous knowledge of the facts."  *Deorle*, 272 F.3d at 1281.

Further, cases that apply the collective knowledge doctrine apply it to the issues of probable cause and reasonable suspicion in only two situations.  First, where law enforcement agents are working together in an investigation and there has been some communication among officers, even where information giving rise to reasonable suspicion or probable cause is not actually given to the detaining officer, and the officers have not explicitly communicated the facts each has independently learned.  Second, "where an officer (or team of officers), with direct personal

Page 12 – OPINION AND ORDER ON MOTION TO STRIKE

knowledge of *all* the facts necessary to give rise to reasonable suspicion or probable cause, directs or requests that another officer, not previously involved in the investigation, conduct a stop, search or arrest." *Ramirez*, 473 F.3d at 1033 (emphasis in original). Where both probable cause to arrest and excessive force are at issue in the same case, courts have limited application of the collective knowledge doctrine to wrongful stop, search, and arrest claims. In *Mateo v. City of Portland*, No. 3:13-CV-00180-KI, 2014 WL 4384595 (D. Or. Sept. 3, 2014), wrongful arrest and excessive force were both at issue; the court stated the collective knowledge doctrine could be properly applied to the wrongful arrest claim, *id.* at *5, but a reasonableness standard applied to the excessive force claim, *id.* at *3–4.

Moreover, though both claims are brought under the Fourth Amendment, the probable cause analysis differs between wrongful stop, search, and arrest cases and excessive force cases. In the first instance — in cases like *Ramirez* where applying the collective knowledge doctrine is proper — the question is whether the officer had probable cause to stop, search, or arrest. In excessive force cases, on the other hand, the relevant question is whether "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Orn*, 949 F.3d at 1174 (quoting *Garner*, 471 U.S. at 11). "A suspect may pose such a threat if 'there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm,' or if the suspect threatens the officer or others with a weapon capable of inflicting such harm." *Id.* (quoting *Garner*, 471 U.S. at 11). The Ninth Circuit Civil Jury Instructions reflect this definition of probable cause in excessive force cases and include among the reasonableness factors "whether there was probable cause for a reasonable officer to believe that the suspect had committed a crime involving the infliction or threatened

Page 13 – OPINION AND ORDER ON MOTION TO STRIKE

infliction of serious physical harm." NINTH CIR. JURY INSTRUCTIONS COMM., MANUAL OF MODEL CIVIL JURY INSTRUCTIONS FOR THE DISTRICT COURTS OF THE NINTH CIRCUIT 9.25 (2019).

In sum, the standard for excessive force claims is objective reasonableness. Objective reasonableness is determined based on the officer's knowledge at the time force is applied — not in hindsight, and not in conjunction with the uncommunicated knowledge of others. This rule is firmly rooted in the case law in this district and the Ninth Circuit. Therefore, Defendants may not rely on the collective knowledge doctrine to allege facts unknown to Officer Hearst in support of Defendants' affirmative defenses relating to Plaintiffs' Fourth Amendment claims.

II.    Objective Reasonableness (Third Affirmative Defense)

Plaintiffs argue Defendants' objective reasonableness defense is a negative defense, not an affirmative defense. (Mot. to Strike at 5.) Plaintiffs contend that objective reasonableness is an element of Plaintiffs' § 1983 claim, and whether Hearst's shooting was "excessive" is an element of Plaintiffs' state law battery claim, and thus this defense attacks Plaintiffs' case-in-chief. (Mot. to Strike at 5.) Defendants concede in their response this is a negative defense with respect to Plaintiffs' federal claims, but nevertheless urge this court not to strike this defense because it not "redundant, immaterial, impertinent or scandalous." (Defs.' Resp. at 5.) (internal quotation marks omitted).

A negative defense is one that attacks Plaintiffs' prima facie case, and the parties are correct that this is a negative defense with respect to the excessive force claim. To prove Hearst used excessive force, Plaintiffs must show Hearst's use of force was objectively unreasonable based on his contemporaneous knowledge of the facts. *See Deorle*, 272 F.3d at 1281. Therefore, a defense of objective reasonableness simply attacks Plaintiffs' prima facia case and is a negative defense.

Page 14 – OPINION AND ORDER ON MOTION TO STRIKE

Negative defenses are immaterial under Rule 12(f).  Defendants offer no support for their argument that this defense is not redundant, immaterial, impertinent, or scandalous.

Accordingly, Plaintiffs' Motion to Strike the Third Affirmative Defense is GRANTED.

III.     Probable Cause (Fourth Affirmative Defense)

Plaintiffs argue that Defendants' fourth affirmative defense of probable cause is immaterial, impertinent, and redundant, (Mot. to Strike at 6), and that it is a negative defense (Pls.' Reply at 3).  First, Plaintiffs argue this defense is immaterial and impertinent because whether Hearst or the police had probable cause to stop, arrest, or seize Quanice Hayes is not at issue in this case. (Mot. to Strike at 6.)  Rather, Plaintiffs argue, the issue is whether Hearst used excessive force in shooting him.  (Mot. to Strike at 6.)  Second, Plaintiffs argue this defense is redundant of Defendants' second affirmative defense of qualified immunity, where Defendants allege Hearst should not be liable because he acted in good faith.  (Mot. to Strike at 6.)  Third, Plaintiffs argue that probable cause is a negative defense because the burden is on the Plaintiffs to show no probable cause existed to shoot Quanice Hayes.  Defendants argue that probable cause is relevant to an excessive force determination under *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).  (Defs.' Resp. at 9.)

A matter is immaterial if it "has no essential or important relationship to the claim for relief or the defenses being plead." *Whittlestone,* 618 F.3d at 974 (quoting *Fantasy,* 984 F.2d at 1527). A matter is impertinent if it "consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* (quoting *Fantasy,* 984 F.2d at 1527).  A matter is redundant if it is superfluous and can be omitted without a loss of meaning.  *See Wilkerson,* 229 F.R.D. at 170

(noting that a redundant matter is one that constitutes "needless repetition"); *Orff*, 2017 WL 2537250, at *3 ("Redundant matter is the needless repetition of assertions.").

This probable cause affirmative defense is immaterial and redundant.  Probable cause is immaterial as a defense because it is a negative defense.  Whether Hearst had probable cause to shoot Quanice Hayes is a factor in the objective reasonableness analysis in Plaintiffs' prima facia case.  As stated above, Defendants' objective reasonableness defense is immaterial because it is a negative defense.  Probable cause is a factor in that negative defense and thus fails for the same reason.

Further, probable cause is redundant of the qualified immunity defense. The qualified immunity analysis has two prongs: (1) whether the facts plaintiff alleges make out a violation of constitutional rights; and (2) whether that right was clearly established at the time the defendant acted.  *Orn*, 949 F.3d at 1174.  For the first prong, to determine whether Hearst used excessive force in violation of Quanice Hayes's Fourth Amendment right under the objective reasonableness analysis, the court must consider whether Hearst had probable cause to shoot him.  *See id.* Therefore, probable cause is redundant because it is superfluous: it needlessly repeats a factor in Defendants' qualified immunity defense.

Ultimately, Defendants will seek to prove Hearst had probable cause to shoot Quanice Hayes either to support their qualified immunity affirmative defense or to attack Plaintiffs' Fourth Amendment claim.[2]  As an affirmative defense here, however, probable cause is needlessly repetitious and immaterial.

Therefore, Plaintiffs' Motion to Strike the Fourth Affirmative Defense is GRANTED.

---

[2] This opinion is not a ruling on evidence related to such arguments.

Page 16 – OPINION AND ORDER ON MOTION TO STRIKE

IV.  Justification–Common Law (Fifth Affirmative Defense), Justification–Oregon Statute (Sixth Affirmative Defense), Privilege (Seventh Affirmative Defense), Good Faith (Eighth Affirmative Defense), Self-Defense (Ninth Affirmative Defense), and Defense of Others (Tenth Affirmative Defense)

Plaintiffs argue this court should strike Defendants' fifth, sixth, seventh, eighth, ninth, and tenth affirmative defenses as redundant of other affirmative defenses. A matter is redundant if it is superfluous and can be omitted without a loss of meaning. *See Wilkerson,* 229 F.R.D. at 170 (noting that a redundant matter is one that constitutes "needless repetition"); *Orff,* 2017 WL 2537250, at *3 ("Redundant matter is the needless repetition of assertions.").

   *A.  Justification (Fifth and Sixth Affirmative Defenses)*

Defendants assert under Oregon common law and statute that any of use of control or force by Hearst or other officers was justified, as those actions were necessary to carry out their duties as law enforcement officers. (Am. Answer at 17.)  Defendants now direct their justification defenses only at Plaintiffs' state law claims. (Defs.' Resp. at 14.) Plaintiffs argue both justification defenses are redundant of Defendants' ninth (self-defense) and tenth (defense of others) affirmative defenses. (Pls.' Reply at 3.)

   1.  Justification — Common Law (Fifth Affirmative Defense)

Defendants argue that under *Humbird v. McClendon,* 281 Or. 83, 85–86 (1978), justification is a common law affirmative defense to a state law battery claim. (Defs.' Resp .at 14.)  Plaintiffs disagree and argue that *Humbird* can be distinguished from the present case because, unlike here, in *Humbird,* the defendants sought to file an amended answer and affirmative defense that would completely change the theory of their case. (Pls.' Reply at 4.)

In *Humbird,* the plaintiffs brought an action for assault and battery and a unanimous jury awarded them damages. *Humbird,* 281 Or. at 85. The defendants appealed, arguing the trial court

Page 17 – OPINION AND ORDER ON MOTION TO STRIKE

erred when it refused to give certain jury instructions and refused to permit the defendants to file

an amended answer and affirmative defense. *Id.* The court found as proper the trial court's refusal

to give the requested jury instructions, because the requested jury instructions "related to the

affirmative defense of justification and self-defense, while defendants' pleadings consisted of a

general denial." *Id.* at 85–86. The court found the trial court's denial of the defendants' motion

to file an amended answer and affirmative defense proper as well because it was not an abuse of

the trial court's discretion to deny amendment where the amendment "totally changed the

defendants' theory of the case and counsel offered no reasonable justification for the delay in filing

a proper pleading." *Id.* at 86–87.

The *Humbird* case is the only Oregon case that instructs on this issue, and it does not

sufficiently instruct as to whether a common law justification defense will lie in Oregon against a

state law battery claim. It is unclear whether the defendants intended to plead a common law or

statutory justification defense in *Humbird*. To grant Plaintiffs' motion, this court would be

required to make several assumptions of how the Oregon Supreme Court would interpret *Humbird*

as applied to the facts here, which exercise would cause this court to extend beyond its role of

applying Oregon law into the prohibited zone of making Oregon law.

Therefore, Plaintiffs' Motion to Strike the Fifth Affirmative Defense is DENIED.

2. Justification — Oregon Statute (Sixth Affirmative Defense)

Defendants argue that "any use of control or force by Officer Hearst or any of the City's

other police officers was justified, as those actions were necessary to carry out their duties as law

enforcements officers, and those actions were authorized by ORS 161.205(5), ORS 161.209 and

ORS 161.219(3)." (Am. Answer at 17.) Plaintiffs argue those Oregon statutes apply only to criminal liability, not civil liability. (Mot. to Strike at 8–9.)

ORS § 161.205(5) provides that the use of force is justifiable and not criminal in certain circumstances. OR. REV. STAT. § 161.205(5) (2019). Such circumstances include "self-defense or in defending a third person, in defending property, [and] in making an arrest or in preventing an escape . . ." OR. REV. STAT. § 161.205(5). Further, ORS § 161.209 provides that "a person is justified in using physical force upon another person for self-defense or to defend a third person from what the person reasonably believes to be the use or imminent use of unlawful physical force, and the person may use a degree of force which the person reasonably believes to be necessary for the purpose." OR. REV. STAT. § 161.209 (2019). However, ORS § 161.219(3) states that "a person is not justified in using deadly physical force upon another person unless the person reasonably believes that the other person is . . . using or about to use unlawful deadly physical force against a person." OR. REV. STAT. § 161.219(3) (2019).

Where a statute on its face is limited to avoiding criminal prosecution, under Oregon law, that statute does not generally apply to civil liability claims. In *Gigler*, the question presented on appeal was whether there was justification for removing the plaintiff from a city council meeting. *Gigler v. City of Klamath Falls*, 21 Or. App. 753, 754 (1975). The court found "that the physical violence exerted by the officers against plaintiff was no more than necessary to accomplish the legitimate purpose of fulfilling their duty." *Id.* at 763. Accordingly, the court cited ORS §§ 161.235, 161.245, and 162.315, and held that the use of force was justified as a matter of law. *Id.*

The court based its holding in *Hatfield* on the same principles. At issue in *Hatfield* was a jury instruction which stated that "defendant was privileged to use physical force upon another

Page 19 – OPINION AND ORDER ON MOTION TO STRIKE

person in defending himself, or a third person, in defending property, and in making an arrest or in preventing an escape." *Hatfield v. Gracen*, 279 Or. 303, 307 (1977) (internal quotation marks omitted). The court noted that the instruction was taken from ORS § 161.205(5), which "deals only with criminal liability, and . . . is not directly applicable to cases involving civil tort liability." *Id.* The court further stated that "[a]s a general rule, the existence of a statutory defense to a criminal prosecution does not necessarily mean that civil liability can be avoided as well . . . ." *Id.*

In *Evans*, the court looked to *Hatfield* and *Gigler* to determine whether ORS § 161.205 applies in the civil context. *Evans v. Multnomah Cty.*, No. 07-CV-1532-BR, 2009 WL 1011580, at *9–10 (D. Or. Apr. 15, 2009). The court stated that *Hatfield* "did not explicitly rule on whether § 161.205 is ever applicable to a civil matter." *Id.* at *9. However, the court distinguished *Hatfield* from *Gigler* and noted that unlike ORS § 161.205, ORS §§ 161.235 and 161.245 "are not limited on their face to criminal prosecutions." *Id.* Based on the court's statement in *Hatfield* that "under Oregon law the existence of a statutory defense to a criminal prosecution does not generally establish a defense to civil liability," the *Evans* court held that ORS § 161.205 does not provide a defense to a civil-assault claim. *Id.* at *10.

The above cases make clear that where a statute is limited to avoiding criminal prosecution on its face, the court cannot assume it applies to civil claims. Defendants argue *Gigler* proves that the statutes in ORS Chapter 161 *et seq.* are not limited to criminal liability. (Defs.' Resp. at 15.) Defendants are correct insofar as the statutes cited by the *Gigler* court are not limited to criminal liability on their face. OR. REV. STAT. §§ 161.235, 161.245. However, Defendants do not plead these statutes in their sixth affirmative defense; Defendants cite ORS §§ 161.205(5), 161.209, and 161.219(3). (Am. Answer at 17.) Whether the entirety of ORS Chapter 161 relates only to

Page 20 – OPINION AND ORDER ON MOTION TO STRIKE

criminal liability is inapposite:  the question is whether the justification statutes Defendants cite in their affirmative defense — ORS §§ 161.205(5), 161.209, and 161.219(3) — apply only to criminal liability.  The *Evans* court's reading of *Hatfield* and *Gigler* resolves this issue by holding that where a statute on its face applies to avoiding criminal prosecution, it does not generally apply to civil claims.  ORS § 161.205 on its face applies to avoiding criminal prosecution, so it does not apply to Plaintiffs' civil claims here.

The other statutes Defendants cite, ORS §§ 161.209 and 161.219, are not explicitly limited to avoiding criminal prosecution, OR. REV. STAT.  §§ 161.209, 161.219, but these sections are nevertheless redundant of Defendants' ninth and tenth affirmative defenses of self-defense and defense of others.  In fact, Defendants even cite ORS § 161.209 in support of their ninth and tenth affirmative defenses.  (Defs.' Resp. at 18.)

Accordingly, Plaintiffs' Motion to Strike the Sixth Affirmative Defense is GRANTED.

*B.  Privilege (Seventh Affirmative Defense)*

Plaintiffs argue Defendants' affirmative defense of privilege is redundant of Defendants' second, third, fourth, fifth, and sixth affirmative defenses.  (Mot. to Strike at 9.)  Defendants argue *Gigler* makes clear that privilege avoids liability for a civil battery claim.  (Defs.' Resp. at 16–17.)  Defendants do not provide any statutory basis for their privilege defense.

When an officer uses no more force than necessary to accomplish the legitimate purpose of fulfilling their duty, that force is reasonable and that officer is not liable for battery.  *Gigler*, 21 Or. App. at 763 ("the physical violence exerted by the officers against plaintiff was no more than necessary to accomplish the legitimate purpose of fulfilling their duty. Therefore, it was justified, as a matter of law . . . .") (citing ORS §§ 161.235, 161.245, 162.315); *see also Evans*, 2009 WL

Page 21 – OPINION AND ORDER ON MOTION TO STRIKE

1011580, at *10 (citing *Gigler*, 21 Or. App. at 763).  Defendants argue this makes clear that police

officers in Oregon are "privileged" to use such force.  (Defs.' Resp. at 16.)

This defense is redundant of Defendants' fifth affirmative defense of common law

justification.  *Gigler*, cited by Defendants, does not reference "privilege"; instead, *Gigler* uses the

language that force was "justified" and cites ORS §§ 161.235, 161.245, 162.315.  *Gigler*, 21 Or.

App. at 763.  Discussing *Gigler*, the court in *Evans* only stated "the force was reasonable and the

officers did not commit assault or battery."  *Evans*, 2009 WL 1011580, at *10.  Thus, if *Gigler*

provides any defense apart from those available in the Oregon statutes the court cites (but that

Defendants do not rely on or cite as the basis of their privilege defense), *Gigler* stands for a

common law justification defense presumably no different from the common law justification

defense referenced without discussion by the court in *Humbird* — upon which Defendants rely for

their fifth affirmative defense of common law justification.  If that be the case, then this seventh

affirmative defense of privilege is redundant of the fifth affirmative defense of common law

justification.

Accordingly, Plaintiffs' Motion to Strike the Seventh Affirmative Defense is GRANTED.

*C.  Good Faith (Eighth Affirmative Defense)*

Defendants assert that "any use of control or force by Officer Hearst or any of the City's

other police officers was done in good faith."  (Am. Answer at 18.)  Plaintiffs argue this good faith

affirmative defense is redundant of Defendants' second, fifth, sixth, and seventh affirmative

defenses.  (Mot. to Strike at 10; Pls.' Reply at 5.)  Defendants argue that good faith is not redundant

of qualified immunity because qualified immunity requires an objective test that focuses on

conduct rather than thoughts.  (Defs.' Resp. at 10.)  Seemingly in the alternative, Defendants argue

Page 22 – OPINION AND ORDER ON MOTION TO STRIKE

that even if this good faith defense is redundant of the qualified immunity defense, qualified immunity only applies to Plaintiffs' federal claims, whereas this good faith defense also applies to Plaintiffs' state law claims. (Defs.' Resp. at 17.) Plaintiffs read Defendants' response to concede that the good faith defense does not apply to Plaintiffs' federal claim. (Pls.' Reply at 5.)

1. Good Faith Defense to Federal Claims

While reasonableness is an objective inquiry under the qualified immunity analysis for Fourth Amendment excessive force claims specifically, qualified immunity on the whole applies only to actions taken in good faith. "The doctrine of qualified immunity insulates government agents against personal liability for money damages for actions taken in good faith pursuant to their discretionary authority. More specifically, 'governmental officials . . . generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Deorle*, 272 F.3d at 1285 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982) (citations omitted).

As it applies to Plaintiffs' federal claims, this good faith affirmative defense is redundant of Defendants' second affirmative defense of qualified immunity. Defendants will argue under their qualified immunity defense that the officers' actions were taken in good faith; a separate good faith defense is needlessly repetitious.

Therefore, Plaintiffs' Motion to Strike the Eighth Affirmative Defense as it applies to Plaintiffs' federal claims is GRANTED.

2.   Good Faith Defense to State Law Claims

Defendants argue this good faith defense applies to Plaintiffs' state law claims.  (Defs.' Resp. at 17.)  Plaintiffs argue that this defense is redundant of Defendants' fifth, sixth, and seventh affirmative defenses of justification and privilege.

"[A] police officer is justified under Oregon law in using physical force when he or she believes it is reasonably necessary to make an arrest, . . . and a police officer is presumed to be acting in good faith in determining the amount of force necessary to make the arrest."  *Ballard v. City of Albany*, 221 Or. App. 630, 641 (2008) (citing *Gigler*, 21 Or. App. at 763; *Rich v. Cooper*, 234 Or. 300, 309 (1963)).  This means in Oregon a police officer is entitled to an evidentiary presumption and jury instruction explaining that a police officer acts in good faith in determining the amount of force to be used in making an arrest.  *Rich*, 234 Or. at 311.

As it relates to Plaintiffs' state law claims, this seventh affirmative defense is not redundant of any other affirmative defenses.  This defense seeks to secure a presumption and jury instruction in favor of Defendants, unlike Defendants' justification and privilege affirmative defenses, which seek to avoid liability on Plaintiffs' civil claims without reference to any presumption or instruction.

Therefore, Plaintiffs' Motion to Strike the Eighth Affirmative Defense as it applies to Plaintiffs' state law claims is DENIED.

D.  *Self-Defense and Defense of Others (Ninth and Tenth Affirmative Defenses)*

Defendants assert that Officer Hearst was justified and privileged to use lethal force to protect himself and other persons from a reasonable belief of an immediate threat of death or serious bodily injury from Quanice Hayes.  (Am. Answer at 18.)  Plaintiffs argue these affirmative

Page 24 – OPINION AND ORDER ON MOTION TO STRIKE

defenses of self-defense and defense of others are negative defenses that go to the reasonableness inquiry in Plaintiffs' case-in-chief and are redundant of Defendants' affirmative defenses of qualified immunity, objective reasonableness, justification, and privilege. (Mot. to Strike at 10–11.) Defendants argue that Plaintiffs' argument incorrectly assumes Plaintiffs' burden to show Hearst acted unreasonably is the same burden as proving Hearst was not acting in self-defense or defense of others. (Defs.' Resp. at 18.) Further, Defendants argue that in Oregon, self-defense and defense of others are clearly established affirmative defenses to state law battery claims. (Defs.' Resp. at 18.)

 1. Self-Defense and Defense of Others Defense to Federal Claims

 As to Plaintiffs' federal claims, Defendants offer no more than that Plaintiffs' burdens will not be identical for proving unreasonableness and for proving that Hearst did not act in self-defense or defense of others. Plaintiffs' burden for proving unreasonableness is clear from the Fourth Amendment discussion above. However, Plaintiffs' burden for proving Hearst did not act in self-defense or defense of others is unclear because Defendants offer no case law or statutory support for these defenses when it comes to Plaintiffs' federal claims. Plaintiffs cite a footnote in *Quintanilla v. City of Downey*, 84 F.3d 353 (9th Cir. 1996), that references self-defense, without discussion. *Quintanilla*, 84 F.3d at n.1. In that case, the plaintiff argued the district court erroneously refused to instruct the jury on self-defense in a suit for excessive force. *Id.* In the footnote Plaintiffs cite, the court summarily "dispose[d] of this contention because it has no basis in the law, and is therefore without merit." *Id.* Without more, however, *Quintanilla* is not conclusive as to whether self-defense is ever a proper affirmative defense in excessive force cases.

Defendants assert in their ninth and tenth affirmative defenses that Officer Hearst was justified and privileged to use lethal force to protect himself and other persons from "a reasonable belief of an immediate threat of death or serious bodily injury from Quanice Hayes." (Am. Answer at 18.)  Plaintiffs are correct that these defenses incorporate concepts of "reasonableness," "justification," and "privilege."  (Pls.' Reply at 6.)  However, a matter is redundant if it is superfluous and can be omitted without a loss of meaning.  At this stage, it is not clear without more from both parties whether these defenses to Plaintiffs' federal claims are redundant of qualified immunity and objective reasonableness.  Similarly, it is not clear whether these defenses are negative defenses.  Because motions to strike are generally disfavored, Defendants may plead these ninth and tenth affirmative defenses against Plaintiffs' federal claims.

Accordingly, Plaintiffs' Motion to Strike the Ninth and Tenth Affirmative Defenses as they apply to Plaintiffs' federal claims is DENIED.

2.  Self-Defense and Defense of Others Defense to State Law Claims

As to Plaintiffs' state law claims, self-defense and defense of others are proper affirmative defenses to battery claims in Oregon.  Defendants in assault and battery cases may plead self-defense as an affirmative defense.  *See Politte v. Vanderzee*, 256 Or. 461, 463 (1970); *Rich*, 234 Or. at 305; *Linkhart v. Savely*, 190 Or. 484, 496 (1951).  Further, ORS § 161.209 provides that "a person is justified in using physical force upon another person for self-defense or to defend a third person from what the person reasonably believes to be the use or imminent use of unlawful physical force, and the person may use a degree of force which the person reasonably believes to be necessary for the purpose."  OR. REV. STAT. § 161.209.  Thus, the law is clear in Oregon that self-defense and defense of others may be pleaded as affirmative defenses to battery claims.

In light of the above, Plaintiffs' Motion to Strike the Ninth and Tenth Affirmative Defenses as they apply to Plaintiffs' state law claims is DENIED.

V.    Comparative Fault (Eleventh and Thirteenth Affirmative Defenses)

Plaintiffs include the following allegations against the City for negligence in their Amended Complaint:

> 39. The City of Portland's failure to enforce policies on its police officers to use apprehension procedures that give clear, uncontradicted instructions to those they want to arrest creates a foreseeable risk of serious harm to the individuals they choose to arrest.
>
> 40. The City of Portland's failure to enforce policies on its police officers to develop and execute plans for taking a suspect into custody that will minimize the risk of harm to both the suspect and the officers is unreasonable.
>
> 41. The City of Portland's failure to hold officers accountable for violating or acting inconsistent with directives, policies, and/or training is unreasonable.
>
> 42. These failures to effectively train, or failure to ensure that training is followed, creates an obvious risk of death to citizens who are attempting to follow police officer commands and is unreasonable.
>
> 43. These failures were a cause of Quanice Hayes' death.
>
> 44. Andrew Hearst's failure to listen and recognize that officers were giving contradictory commands to Quanice Hayes, and that Hayes was complying with one of the officers, while Hearst had an assault rifle pointed at Hayes' head created a foreseeable risk of serious harm to Quanice Hayes.
>
> 45. The officers' failure to develop and execute a plan to minimize the risk to the suspect and officers to take the suspect into custody created a foreseeable risk of serious harm to Quanice Hayes.
>
> 46. This failure to exercise reasonable care in creating a custody plan, in listening to the commands being shouted at Quanice Hayes, and in observing that Hayes was complying with one officer's commands, created an obvious risk of death to Quanice Hayes and was unreasonable.
>
> 47. This failure was a cause of Quanice Hayes' death.

(First Am. Compl. at ¶¶ 39–47.)  Defendants assert that "City Defendants are not at fault in the action pled by Plaintiffs because the death of Quanice Hayes was the sole and exclusive fault of Mr. Hayes." (Am. Answer at 18–19.)  Defendants list seventeen allegations of Quanice Hayes's conduct they consider criminal, reckless and negligent:

(a) Possessing, displaying and using a realistic-looking, replica 9mm CZ P-09 handgun after being explicitly warned by Portland police officers in November 2016 about the dangers of possessing, displaying or using replica firearms.

(b) Possessing, displaying and using a realistic-looking, replica 9mm CZ P-09 handgun in a manner to cause public alarm;

(c) Robbing a community member by displaying and using a realistic-looking, replica 9mm CZ P-09 handgun to threaten death or serious bodily injury;

(d) Breaking into an automobile and stealing personal property from the automobile, causing alarm to the owner of the automobile;

(e) Trespassing into a residential backyard at 8322 NE Tillamook Street, causing alarm to the occupants of the residence, including two children;

(f) Lying to uniformed police officers about his presence at the residence where he was trespassing and causing alarm;

(g) Failing to obey the lawful commands of uniformed police officers by running away from those officers;

(h) Failing to obey the lawful commands of uniformed police officers by running away from those officers while intentionally continuing to retain and possess a realistic-looking, replica 9mm CZ P-09 handgun;

(i)      Trespassing into a second residential backyard at 8301 NE Hancock Street;

(k) Destroying the residential home's alarm system to conceal his presence inside the home he was burglarizing;

(l) Stealing personal property, including foreign currency, from the burglarized home;

(m) Failing to discard the realistic-looking, replica 9mm CZ P-09 handgun prior to the confrontation with the police officers on the driveway of 8301 NE Hancock Street;

(n) Failing to explain to any police officer, either while confronted by police officers at 8322 NE Tillamook Street, or at 8301 NE Hancock Street, that the weapon he was possessing was only a realistic-looking, replica 9mm CZ P-09 handgun, and not an actual firearm;

(o) Failing to obey the lawful commands of uniformed police officers to keep his hands away from his waist band, both at 8322 NE Tillamook Street, and at 8301 NE Hancock Street;

(p) Consuming or abusing several substances, including illegal ones such as cocaine, in the hours before the criminal, reckless and negligent conduct described above in paragraph 63(b)-(o), that affected Mr. Hayes' judgment and decision-making; and

(q) Failing to sleep properly after consuming or abusing several substances, including illegal ones such as cocaine, in the hours before the criminal, reckless and negligent conduct described above in paragraph 63(b)-(o), that affected Mr. Hayes' judgment and decision-making.

(Am. Answer at ¶¶ 63(a)–(q).)  Plaintiffs move to strike these eleventh and thirteenth affirmative defenses and argue that ORS § 31.600 does not apply to Plaintiffs' § 1983 claims or state law intentional tort claim.  (Mot. to Strike at 13.)  Plaintiffs further contend that Plaintiffs' conduct fails to meet the standard for comparative fault given the nature of the negligence Plaintiffs allege against the City.  (Mot. to Strike at 15.)  Defendants clarify in their response that their comparative fault defenses are not directed at any of Plaintiffs' federal claims or Plaintiffs' battery claim; rather, they are directed only at Plaintiffs' negligence claim against the City.  (Defs.' Resp. at 19, 24.)  Therefore, the issue remaining is whether this court should strike Defendants' comparative fault affirmative defenses as applied to Plaintiffs' negligence claim against the City.

Plaintiffs argue these comparative fault defenses are legally insufficient, immaterial, impertinent, and scandalous.  (Pls.' Reply at 12).  Plaintiffs argue that both comparative fault defenses fail because "the plaintiff's alleged negligence must have been an element in the transaction on which the defendant's negligence is based," and neither Quanice Hayes nor Venus

Page 29 – OPINION AND ORDER ON MOTION TO STRIKE

Hayes's conduct meets that standard.  (Mot. to Strike at 15.)  Further, Plaintiffs argue that Quanice

Hayes was not engaged in the conduct Defendants describe at the time Hearst shot him, nor at the

time the City failed to adequately train and hold its officers accountable.  (Mot. to Strike at 18.)

Therefore, Plaintiffs argue that Defendants' comparative fault defense amounts to "character

assassination" of Quanice Hayes and his mother.  (Mot. to Strike at 18.)  Defendants argue the

City is allowed to show Quanice Hayes engaged in reckless or negligent behavior that increased

the risk of him being shot by the police.  (Defs.' Resp. at 19–20.)  Defendants also contend the

City is not limited to the seconds in time before Hearst shot Quanice Hayes, nor is the City limited

to facts known only to Hearst.  (Defs.' Resp. at 21.)   Further, Defendants argue that foreseeability

and causation are typically jury questions.  (Defs.' Resp. at 21–22.)

### A.  Comparative Fault — Quanice Hayes (Eleventh Affirmative Defense)

The comparative fault affirmative defense in Oregon allows the jury to compare the fault

of the plaintiff with the fault of the defendant, and any damages allowed in such case are

diminished in proportion to the percentage of fault attributable to the plaintiff.  OR. REV. STAT. §

31.600 (2019).  Whether a plaintiff's conduct constitutes comparative fault will turn on whether

the harm was foreseeable, how the class of harm is defined, and whether plaintiff's conduct relates

and contributes to the defendant's negligence.  The test in Oregon for comparative fault is whether

the plaintiff "took some action or failed to take some action which a reasonable person could have

foreseen would increase the risk of harm to the plaintiff, and that the plaintiff did indeed suffer

harm of the type which could have been foreseen." *Son v. Ashland Cmty. Healthcare Servs.*, 239

Or. App. 495, 507 (2010) (citing *Dahl v. BMW*, 304 Or. 558, 563 (1987) (internal quotation marks

omitted)).  General common-law negligence principles apply, only they must be considered in the

context of the plaintiff's conduct and plaintiff's injury. *Son*, 239 Or. App. at 507 (citing *Dahl*, 304 Or. at 563).

Conduct that unreasonably creates a foreseeable risk of the type of harm that befell the plaintiff constitutes comparative fault. *Fazzolari By and Through Fazzolari v. Portland School Dist. No. 1J*, 303 Or. 1, 18 (1987). "Foreseeability refers to generalized risks of the type of incidents and injuries that occurred rather than the predictability of the actual sequence of events," *Fazzolari*, 303 Or. at 21, and involves a prospective judgment about a course of events, *Chapman v. Mayfield*, 358 Or. 196, 206 (2015). The risk of harm need not be more probable than not; rather, the question is whether a reasonable person considering the potential harms that might result from his or her conduct would have reasonably expected the injury to occur. *Id.* Further, foreseeability does not encompass all sources of injury in a dangerous world, nor does it demand precise mechanical imagination or paranoid view of the universe. *Fazzolari*, 303 Or. at 21. Though foreseeability often goes to the jury, the question of foreseeability is properly kept from the jury where a plaintiff's injury and the manner of its occurrence are so highly unusual that the court can say that as a matter of law a reasonable actor would not have reasonably expected the injury to occur. Piazza v. Kellim, 360 Or. 58, 74 (2016) (en banc).

Oregon courts place limits on what consequences are foreseeable. For example, in *Moore*, a personal representative sued two taverns for negligence after the taverns served visibly intoxicated patrons who thereafter shot a taxi driver. *Chapman*, 358 Or. at 212 (discussing *Moore v. Willis*, 307 Or. 254, 256–58 (1988)). The Oregon Supreme Court held that where a complaint did not allege any facts connecting overconsumption of alcohol to violence, the mere fact that a patron is visibly intoxicated does not make it foreseeable that serving the patron alcohol creates an

unreasonable risk that the patron will become violent. *Id.* at 212–13 (discussing *Moore*, 307 Or. at 256–61). Another example is negligence cases involving third-party criminal activity, where a plaintiff must allege concrete facts demonstrating that a reasonable person in the defendant's position would have foreseen that the person or location and circumstances posed a risk of criminal harm to persons such as the plaintiff. *Piazza*, 360 Or. at 81. In such cases, evidence of generic fact that criminals commit crimes is insufficient to establish foreseeability. *Id.* at 86 (discussing *Buchler v. State By and Through Oregon Corrections Div.*, 316 Or. 499, 511 (1993)).

Next, whether a particular harm is foreseeable turns in large part on how the class of harm is characterized in a given case. *Stewart v. Jefferson Plywood Co.*, 255 Or. 603, 610 (1970). The definition of the class of harm must be somewhere between "very generalized" and a "detailed, mechanism-of-harm description." *Id.* at 610 (citing KEETON, LEGAL CAUSE IN THE LAW OF TORTS 51 (1963)). But "even though the precise mechanism of harm need not be foreseeable," the type of harm that a plaintiff risks as a foreseeable consequence of his own conduct in a comparative fault case must be described "with reference to the particular factual circumstances of the case, as gleaned from the pleadings and evidence in the record." *See Chapman*, 358 Or. at 220.

The Oregon Supreme Court decision *Stewart v. Jefferson Plywood Co.* is illustrative of the principles of foreseeability and defining the class of harm based on the plaintiff's theory of liability. *Jefferson Plywood Co.*, 255 Or. 603. There, the defendant caused a fire and the plaintiff fell through a concealed skylight while trying to protect a nearby building from the flames. *Id.* at 605. Foreseeable risks were not limited to being burned by the fire, but also included physical injury from falling off a ladder or through the roof. *Chapman*, 358 Or. at 207 (discussing *Jefferson Plywood Co.*, 255 Or. at 610). The court acknowledged that while falling through a concealed

Page 32 – OPINION AND ORDER ON MOTION TO STRIKE

skylight "might not be a common cause of injury, that circumstance was not so uncommon that the defendant could not reasonably foresee the risk of harm." *Id.* at 207 (discussing *Jefferson Plywood Co.*, 255 Or. at 610). In defining the class of harm, the court "assesse[d] the overall 'setting for possible injury' under the plaintiff's theory of liability." *Id.* at 208 (quoting *Jefferson Plywood Co.*, 255 Or. at 610). In that case, under the plaintiff's theory of liability, the class of harm was defined as possible injuries in the course of fighting a fire. *Id.* (quoting *Jefferson Plywood Co.*, 255 Or. at 611).

Finally, a plaintiff's negligent conduct can form the basis of a comparative fault defense when it relates and contributes to the defendant's negligence at issue. *Gardner v. Oregon Health Sciences University*, 299 Or. App. 280, 290 (2019) (citing *Son*, 239 Or. App. at 512). Stated another way, a plaintiff's negligence must be an element in the transaction on which the defendant's negligence is based, *see Son*, 239 Or. App. at 509, or affect the event for which recovery is sought. *Mills v. Brown*, 303 Or. 223, 229 (1987) (quoting *Sandford v. Chev. Div. Gen. Motors*, 292 Or. 590, 606 (1982)). For example, in medical malpractice cases, the focus is on the injury caused by the defendant's negligence, not the plaintiff's original injury. *Son*, 239 Or. App. at 508–509. In such cases, a comparative fault defense requires that the "plaintiff's negligent conduct relate and contribute to the negligent treatment, because it is the negligence treatment that causes the injury that is at issue. *Id.* at 509. In a negligence action arising from the decedent's suicide, facts constituting a viable comparative fault defense included decedent providing incomplete or inaccurate information to the provider, withholding information from the provider, and in other ways declining, refusing, or failing to heed the provider's advice or treatment plan. *Gardner*, 299 Or. App. at 291. Conversely, the court noted that facts that did not relate and

contribute to the harm caused by the defendant's negligence, but instead related to the conduct that created the initial need for treatment, could not have constituted a comparative fault defense. *Id.* at 291–92.

Defendants' allegations in paragraph 63(a)–(1) and 63(q) are insufficient to constitute a comparative fault defense. Plaintiffs allege the City failed to enforce its policies on its police officers (paragraphs 39 and 40), failed to hold officers accountable (paragraph 41), and failed to train its police officers (paragraph 42), and these failures were a cause of Quanice Hayes's death (paragraph 43). (First Am. Compl. at ¶¶ 39–43.) These allegations relate to the City's failures prior to and independent of the specific interaction with Quanice Hayes. Plaintiffs additionally allege Hearst failed to listen to and recognize officers were giving conflicting commands (paragraph 44), and the officers failed to develop and execute a plan to minimize the risk to the suspect and officers to take the suspect into custody (paragraph 45), and this failure to exercise reasonable care in creating a custody plan, in listening to the commands being shouted at Quanice Hayes, and in observing that Hayes was complying with one officer's commands, created an obvious risk of death to Quanice Hayes and was unreasonable (paragraph 46), and this failure was a cause of Quanice Hayes's death (paragraph 47). (First Am. Compl. at ¶¶ 44–47.) This second set of allegations relates to events at the scene.

Plaintiffs' conduct must relate and contribute to the City's negligence. Allegations of Plaintiffs' comparative fault that do not relate or contribute to the City's various failures prior to and independent of the events involving Quanice Hayes, including those at the scene on the driveway of 8301 NE Hancock Street, are insufficient. The allegations in paragraph 63(a)–(l) and

63(q) of Defendants' Amended Answer neither relate or contribute to the City's existing failures nor the City's actions at the scene.

The allegations in paragraph 63(a)–(l) and 63(q) of Defendants' Amended Answer also fail on the element of foreseeability. "Foreseeability refers to generalized risks of the type of incidents and injuries that occurred rather than the predictability of the actual sequence of events." *Fazzolari*, 303 Or. at 21. A fair characterization of the type of harm allegedly risked by Hayes's actions in this case is getting shot by a police officer. So characterized, if the allegations in paragraph 63(a)–(l) and 63(q) made it reasonably foreseeable to Quanice Hayes that, among other things, stealing property and failing to get enough sleep risked the type of harm at issue — getting shot — then anyone who commits theft or burglary should reasonably expect not to be arrested, but to be shot. As Plaintiffs state: that is not the law.

Moreover, with respect to the first set of Plaintiffs' allegations, Quanice Hayes's actions could not foreseeably have had any effect on the City's failures, namely, in training of its officers, failing to hold officers accountable, failing to enforce policies. Whether such failures "manifested themselves through actions or omissions of the officers confronting Mr. Hayes at the time of his death" (Defs.' Resp. at 20) does not change that such failures were not foreseeable consequences of Quanice Hayes's actions — logically, Quanice Hayes's actions occurred after the City's failures in the first set of allegations, however manifested at a later date. Therefore, Defendants still cannot support a comparative fault defense with the facts alleged. Lastly, though the question of foreseeability generally goes to the jury, Hayes's injury in this case and the manner of its occurrence — the allegations in paragraph 63(a)–(l) and 63(q) — are "so highly unusual that the court can say that as a matter of law a reasonable actor would not have reasonably expected the

injury to occur." *Piazza*, 360 Or. at 74.  Here, the allegations in paragraph 63(a)–(l) and 63(q) are immaterial and impertinent.

Differently, it is appropriate for Defendants to plead allegations in paragraph (m)–(p) in support of their comparative fault affirmative defense.  Quanice Hayes's actions alleged in paragraph (m)–(p) — failing to discard the replica handgun prior to the confrontation with police, failing to explain to the officers that the handgun was a replica, failing to keep his hands away from his waistband, and consuming illegal substances — are contemporaneous with the City's negligence at the scene as alleged by Plaintiffs in paragraphs 44–47 of Plaintiffs' FAC.  Thus, under the setting for possible injury based on Plaintiffs' theory of liability, it is possible that the conduct alleged in paragraph 63(m)–(p) related or contributed to the City's negligence at the scene where Hearst shot Quanice Hayes, and the question of foreseeability is properly left to the jury.  First, Defendants may argue Hayes's conduct as alleged in paragraph 63(m)–(p) affected the event for which Plaintiffs seek recovery:  such allegations do not relate to the necessity of initial police intervention, but rather relate to the City's alleged negligence once all parties arrived at the scene.  Further, a jury may determine whether a reasonable person considering the potential harms that might result from Hayes's actions in paragraph 63(m)–(p) would have reasonably expected to be shot by a police officer as a consequence of those actions; unlike the allegations in paragraph 63(a)–(l) and 63(q), the allegations in paragraph (m)–(p) are not so highly unusual as a manner of occurrence of Hayes's injury that the court may say the injury was not foreseeable as a matter of law.

Accordingly, Plaintiffs' Motion to Strike the Eleventh Affirmative Defense is GRANTED as to the allegations in paragraph 63(a)–(l) and 63(q) and DENIED as to the allegations in paragraph 63(m)–(p).

### B. Comparative Fault — Venus Hayes (Thirteenth Affirmative Defense)

Defendants argue that City Defendants are not at fault in the action pled by Plaintiffs because the death of Quanice Hayes was caused in part by the negligence of his mother, Venus Hayes. (Am. Answer at ¶ 68.) First, Defendants argue that "[p]arents have legal responsibilities for their minor children." (Defs.' Resp. at 24.) Second, Defendants argue that under ORS § 30.765(1), a parent is liable for actual damages caused by any tort intentionally or recklessly committed by their child. (Defs.' Resp. at 24.) Third, Defendants argue parents who are beneficiaries of their child's estate may be sued for comparative fault relating to the death of a child. (Defs.' Resp. at 24.) Plaintiffs argue that Venus Hayes was in treatment when her son was killed, which means she cannot be at fault for her son's death, nor was his death foreseeable. (Mot. to Strike at 18.) Further, Plaintiffs argue that Defendants' lack support for any of their arguments. (Pls.' Reply at 11–12.)

On March 5, 2020, after oral arguments, Defendants withdrew this thirteenth affirmative defense. Although Defendants voluntarily withdrew this affirmative defense, Plaintiffs' position is that such an affirmative defense is not viable under Rule 12(f), and this court agrees.

Therefore, Defendants may not re-raise this affirmative defense, and Plaintiffs' motion to strike the Thirteenth Affirmative Defense is GRANTED for that purpose.

VI.    Certain Felonious Conduct (Twelfth Affirmative Defense)

Defendants assert that "Plaintiffs' state law claims are barred by ORS 31.180, as Mr. Hayes' felonious conduct described above . . . was a substantial factor contributing to his death." (Am. Answer at 20.)  Plaintiffs argue that Quanice Hayes was not involved in any felonious conduct at the time Hearst shot him, and thus urge the court to strike this defense.  (Mot. to Strike at 19.)  Defendants disagree and contend that Quanice Hayes's felonious conduct Defendants describe was ongoing, and his conduct created and maintained the risk of injury to him.  (Defs.' Resp. at 26.)

In Oregon, it is a complete defense in any civil action for personal injury or wrongful death that the person damaged engaged in conduct at the time that would constitute a Class A or Class B felony, where the felonious conduct was a substantial factor contributing to the death or injury. OR. REV. STAT. § 31.180 (2019).  "[T]he requirement that the injured person was engaged in [criminal] conduct at the time means that, to rely on the defense, the defendant must show that the offense was ongoing at the time that the injuries were inflicted."  *Harryman v. Fred Meyer, Inc.*, 289 Or. App. 324, 328 (2017).

A burglary is not "ongoing" when officers pursue the burglary suspect.  In *Estate of Kalama v. Jefferson Cty.*, No. 3:12-cv-01766-SU, 2015 WL 464891 (D. Or. Feb. 4, 2015), a county sheriff's office received a report of an armed burglary at a stereo store.  *Id.* at *3.  A sheriff's deputy pulled over a car matching the description of the suspect vehicle and number of occupants. *Id.*  The deputy ordered the car's occupants to put their hands on the ceiling.  *Id.*  As the deputy then approached the car, the driver drove away from the traffic stop.  *Id.*  After the car fled, the deputy immediately pursued the car down the highway.  *Id.* at *4.  Soon after, the car struck a

Page 38 – OPINION AND ORDER ON MOTION TO STRIKE

guardrail and collided with an oncoming police car. *Id.* Four occupants died as a result, and one survived but suffered permanent mental and physical injury. *Id.* Representatives of the occupants brought state negligence claims. *Id.* The defendants argued that the negligence claim was barred by ORS § 31.180 because there was sufficient evidence to find that the occupants of the car committed the armed burglary that prompted the deputy to pull them over. *Id.* at *2. The court disagreed, however, and stated, "even if the evidence in the record were sufficient to establish on summary judgment that the Occupants of the car committed the armed burglary, Defendants have pointed to no authority or evidence that the armed burglary was ongoing at the time that the Occupants fled from a traffic stop." *Id.*

By contrast, when a plaintiff commits a felony as part of an altercation that is ongoing at the time of the plaintiff's injury, a defense under ORS § 31.180 is proper. In *Harryman*, the plaintiff was waiting in the checkout line at the defendant's store when the plaintiff and another person ahead of him in line engaged in an argument that escalated to a physical fight. *Harryman*, 289 Or. App. at 326. Plaintiff had a handgun and shot that person in the leg. *Id.* In response, the defendant's employees pushed the plaintiff to the floor to disarm him. *Id.* As a result of the shooting, the plaintiff was convicted to assault in the second degree with a firearm, a Class B felony in Oregon. *Id.* Plaintiff subsequently sued the defendant seeking damages for injuries he claims to have sustained when the defendant's employees pushed him to the floor. *Id.* at 327. The defendant argued the plaintiff's claim was barred by ORS § 31.180, *id.*, but the plaintiff responded that the defense was not available because, at the time of his injury, the plaintiff's conduct constituting the felony was not ongoing, *id.* at 328. The court held that at the time the defendant's employees knocked the plaintiff down, the plaintiff had just shot the other person and was still

armed, and there was no evidence that the altercation had ended. *Id.* at 329. Thus, as a matter of law, the plaintiff's injuries occurred "at the time" that the plaintiff committed the felony. *Id.*

Here, Quanice Hayes's conduct, if felonious, was not ongoing at the time Hearst shot him. Unlike in *Harryman*, Quanice Hayes had surrendered by the time Hearst shot him. (First Am. Compl. at 12 ¶ 19) ("He obeyed the commands of Officer Robert Wullbrandt, and crawled on his hands and knees as ordered, coming to a stop when ordered to do so.") The offense of burglary in the first degree supports this conclusion. In Oregon, "[a] person commits the crime of burglary in the first degree . . . if in effecting entry or while in a building or in immediate flight therefrom the person: (a) Is armed with a burglary tool or theft device . . . or a deadly weapon; (b) Causes or attempts to cause physical injury to any person; or (c) Uses or threatens to use a dangerous weapon." OR. REV. STAT. § 164.225. By the time Hayes was shot, he was not in immediate flight, as he was on his hands and knees complying with an officer's commands. (First Am. Compl. at 12 ¶ 19.) As the felony itself does not include actions taken after immediate flight from a building, and because Hayes was no longer in immediate flight, but surrendering, obeying an officer's commands, any felonious conduct was not ongoing. Without ongoing felonious conduct, under ORS § 31.180, this defense is legally insufficient.

Therefore, Plaintiffs' Motion to Strike the Twelfth Affirmative Defense is GRANTED.

VII.    <u>Right to Assert Additional Affirmative Defenses (Sixteenth Affirmative Defense)</u>

Defendants concede this is not an affirmative defense. Therefore, Plaintiffs' Motion to Strike the Sixteenth Affirmative Defense is GRANTED.

Page 40 – OPINION AND ORDER ON MOTION TO STRIKE

*Conclusion*

For the foregoing reasons, Plaintiffs' Motion to Strike (ECF No. 76) is GRANTED IN PART and DENIED IN PART as follows:  Plaintiffs' Motion is granted as to Defendants' third, fourth, sixth, seventh, twelfth, thirteenth, and sixteenth affirmative defenses in their entirety, as to Defendants' eighth affirmative defense as it applies to Plaintiffs' federal claims, and as to the allegations in paragraph 63(a)–(l) and paragraph 63(q) of Defendants' eleventh affirmative defense, and they shall be stricken; Plaintiffs' Motion is denied as to Defendants' fifth, ninth, and tenth affirmative defenses in their entirety, as to Defendants' eighth affirmative defense as it applies to Plaintiffs' state law claims, and as to the allegations in paragraph 63(m)–(p) of Defendants' eleventh affirmative defense.

IT IS SO ORDERED.

DATED this 10th day of March, 2020.

_____
JOHN V. ACOSTA
United States Magistrate Judge